**In re Baird KNAPPEN, Debtor.**

**No. 13–96–12788 SS.**

United States Bankruptcy Court,
D. New Mexico.

Jan. 17, 2002.

Robert N. Hilgendorf, Santa Fe, NM, for debtor.

## MEMORANDUM OPINION ON DEBTOR'S MOTION TO MODIFY CHAPTER 13 PLAN

JAMES S. STARZYNSKI, Bankruptcy Judge.

This matter is before the Court on the Debtor's Motion to Modify Chapter 13 Plan and Confirmation Order (doc. 131) and the objection thereto filed by Ford Motor Credit Company ("Ford") (doc. 133). Debtor is represented by Robert Hilgendorf. Ford is represented by Allan Wainwright. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (L).

Ford filed a proof of claim in the amount of $18,888 which Ford asserted was fully secured by a 1994 Ford Aerostar, the subject of this dispute. Debtor confirmed his Chapter 13 plan on April 16, 1997, in which he valued Ford's collateral at $9,000 and provided that Ford would be paid $9,000 at the rate of $154.00 per month including interest at 8%. The automatic stay was subsequently terminated for Debtor's failure to make payments. The automatic stay was reinstated by order filed December 28, 1998. On April 16, 1999, the automatic stay was again terminated for debtor's default. Ford then repossessed the vehicle (apparently without the Debtor's knowledge or consent), disposed of the collateral, applied the proceeds of the sale to the balance of its (formerly) secured claim, and still asserts a deficiency on that claim.

Debtor's Motion to Modify Chapter 13 Plan and Confirmation Order (doc. 131) proposes to stop the adequate protection and plan payments and allow Ford to file an amended proof of claim for an unsecured claim. Ford objects, claiming that Bankruptcy Code Section 1329(a) only permits modification of the amount and timing of payments, not the total amount of the claim. Additionally, Ford cites *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.2000) for the proposition that a debtor cannot modify a plan by surrendering collateral and reclassifying the deficiency claim as unsecured.

■ The issue in this case has been addressed in many ways by many courts. *See Nolan*, 232 F.3d at 531 ("[T]here is a clear and fairly even split of authority amongst the federal district courts.") *See also In re Townley*, 256 B.R. 697, 699 (Bankr.D.N.J.2000)(Acknowledging split of authority and citing cases). Some cases rule that section 1329 does not allow a plan amendment that returns secured collateral and reclassifies the remaining claim as unsecured. *See, e.g., Nolan*, 232 F.3d at 535:

> We hold that a debtor cannot modify a plan under section 1329(a) by: 1) surrendering the collateral to a creditor; 2) having the creditor sell the collateral and apply the proceeds toward the claim; and 3) having any deficiency classified as an unsecured claim.

These cases are generally based on 1) res judicata grounds, *see, e.g., In re Dunlap*, 215 B.R. 867, 869 (Bankr.E.D.Ark. 1997)("To avoid the preclusive effect of the principle of res judicata, the modification should be necessitated by an unanticipated, substantial change in circumstance affecting the debtor's ability to pay.") *and In re Banks*, 161 B.R. 375, 378 (Bankr. S.D.Miss.1993)("A debtor's confirmed plan is res judicata as to claims determinations."), or, 2) a reading of the Bankruptcy Code that prohibits the reclassification, *see Nolan*, 232 F.3d at 535 ("Section 1329(a) only permits modification of the *amount* and *timing* of *payments*, not the total *amount* of the *claim*."); *In re Coleman*, 231 B.R. 397, 399 (Bankr.S.D.Ga.1999) ("[Section 1329(a)(1)] does not expressly permit a debtor to alter, reduce or reclassify a previously allowed secured claim."); *In re Abercrombie*, 39 B.R. 178, 179 (Bankr.N.D.Ga.1984)("The interrelation-

ship of §§ 1325(a)(5) and 1327 of the Code compels this court to deny the debtor's objection to the secured claim and the proposed modification of the plan."); *Dunlap*, 215 B.R. at 870 ("[S]ection 1329 does not specifically authorize a modified plan to alter the amount of a previously determined secured claim or to reclassify a claim from secured to unsecured."), or, 3) on equitable grounds, *see In re Holt*, 136 B.R. 260, 260–61 (Bankr.D.Idaho 1992)("[I]t does not appear to be fair and equitable to allow a debtor the continued ability to elect to retain or return secured property during the full term of the plan.")

Other cases do allow amendment and reclassification. *See, e.g., In re Jock*, 95 B.R. 75, 77 (Bankr.M.D.Tenn.1989)("Section 1327(a) is not a limit on permitted modification of a confirmed Chapter 13 plan.").[1] Some cases allow amendment if proposed in "good faith" or in the absence of "bad faith", *see In re Day*, 247 B.R. 898, 903 (Bankr.M.D.Ga.2000)(Debtor is allowed to modify plan absent bad faith.)

Yet other cases address the issue as a failure of adequate protection. *See, e.g., In re Mendez*, 259 B.R. 754, 757 (Bankr. M.D.Fla.2001). Some Courts seem to presume that the secured creditor is entitled to an administrative expense for a decline in the collateral's value. *See Grundy National Bank v. Rife*, 876 F.2d 361, 363–64 (4th Cir.1989)("We are persuaded that § 507(b) converts a creditor's claim where there has been a diminution in the value of a creditor's secured collateral by reason of a § 362 stay into an allowable administrative expense claim under § 503(b).") *and Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Company, Inc.)*, 4 F.3d 940, 941 (11th Cir.1993), *cert. denied,*

510 U.S. 1118, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994)(Same, but specifically noting that the administrative claim arises entirely under § 503(b) as an actual and necessary cost or expense of preserving the estate and not from any deficiency claim based on the underlying prepetition obligation.) This administrative treatment would only be available, however, to the extent the claim exceeds adequate protection payments received. *Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corporation (In re Blackwood Associates, L.P.)*, 153 F.3d 61, 68 (2nd Cir. 1998). At least two cases put the burden on the secured creditor to ensure that payments it receives under the Chapter 13 plan at least equal the accompanying depreciation of the asset. *In re Townley*, 256 B.R. 697, 699–700 (Bankr.D.N.J. 2000)("The solution is for the secured creditor to object to confirmation of the original plan unless the timing and amount of payments is at least equal to the rate of depreciation.") and *In re Jock*, 95 B.R. at 78 ("The creditor who bargains for a stream of payments through a Chapter 13 plan that is not sufficient to protect the creditor from loss in value of its underlying collateral has failed to assert its rights at confirmation."). And of course, there is contrary authority: *In re Coleman*, 231 B.R. at 401 ("Had Debtor either correctly valued the collateral at the outset, when the plan was originally confirmed, or funded the secured claim at a rate equal to the depreciation of the collateral, he would not be faced today with this quandary.").

Yet another line of cases address the issue as one under section 502(j), which allows reconsideration of claims "for cause" and "according to the equities of the case." *In re Zieder*, 263 B.R. 114, 117

---

**1.** Both *Jock* and *In re Anderson,* 153 B.R. 527, 528 (Bankr.M.D.Tenn.1993) were effectively overruled or abrogated by *Nolan.*

(Bankr.D.Ariz.2001)("[T]his Court concludes that liquidation of the collateral by the secured creditor is adequate cause to reconsider a previously allowed secured claim, even after confirmation of the plan chapter 13 plan (sic) and commencement of payments."); *In re Johnson,* 247 B.R. 904, 907 (Bankr.S.D.Ga.1999)("The second issue is whether the secured claim remaining after the post-confirmation surrender of collateral, the deficiency, can be reconsidered.")

■ Having considered the statute and the various cases and legal theories and applied them to the particular facts of this case, the Court adopts the reasoning of those that permit modification of the plan and ceasing payment on the secured claim.

The language of § 1329(a)(1) of the Code explicitly allows the debtor to "reduce the amount of payments on claims of a particular class...." Since each secured claim is generally treated as a separate class [2], *e.g., In re Anderson,* 153 B.R. 527, 528 (Bankr.M.D.Tenn.1993), reducing to nothing the amount of payments on Ford's secured claim fits within the language of the statute. *In re Townley,* 256 B.R. at 699. In this respect, *Nolan,* 232 F.3d at 535 ("Section 1329(a) only permits modification of the *amount* and *timing* of *payments,* not the total *amount* of the *claim.*") misconstrues the language and the intent of the statute. *See also* Lawrence P. King, Collier on Bankruptcy, ¶ 1329.04[1] n. 3

(15th Ed. Rev.) (characterizing the holding in *Nolan* as erroneous).

In addition, the Debtor's Plan provides for a bifurcation of claims into secured and unsecured claims:

> Secured creditors shall retain their liens until any allowed secured claims have been paid.... The remainder of the amount owing shall be treated under the provisions of (c) of this paragraph [dealing with "timely filed and allowed nonpriority unsecured claims"].

Notice of: 1) Deadline for Filing Objections to Chapter 13 Plan; 2) Motions for Valuation; and 3) Motion to Avoid Certain Liens, filed January 24, 1997, at 2 ("Plan"). Docs. 56–61. Thus, even by the standards of *Nolan,* there is no reclassification of claims as such, since there is already a provision for the remaining unpaid Ford claim to be treated as unsecured.

Similarly to § 1329(a)(1), § 1329(a)(3) allows the Debtor to "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." Ford's repossession and sale of the vehicle and application of the sale proceeds to the debt was not provided for in the Plan. Plan, at 2. Ford has already stated that it has credited against the secured claim the amount it received from the sale of the vehicle. Section 1329(a)(3) requires the

---

**2.** The Plan is not a model of clarity with respect to classification. Notice of: 1) Deadline for Filing Objections to Chapter 13 Plan; 2) Motions for Valuation; and 3) Motion to Avoid Certain Liens ("Plan"), filed January 24, 1997 (docs. 56–61). Article II, paragraph 2(a) provides for the payment of administrative expenses. Paragraph 2(b) provides varying treatments for the several claims which are secured by different collateral and with different interest rates, and includes the priority unsecured claim of the New Mexico Taxation and Revenue Department. And para-

graph 6 is a motion to avoid the judicial lien of Paul Shepard, one of the creditors holding a purportedly secured claim described and treated in paragraph 2(b). Paragraph 2(c) provides for payment on the nonpriority unsecured claims of the "amounts required by Section 1325(b)(1) [disposable income rule]." Plan, at 2–3. Practically speaking, the Plan does not classify the claims in paragraph 2(b) except perhaps to the extent that putting the diverse claims into one subparagraph constitutes an attempted classification.

creditor to do this, at least if the Debtor, trustee or holder of an allowed unsecured claim so requests. Section 1329(a). The reduction of the remaining obligation thus necessarily results in a reduction of the amount of the claim.

Acknowledging the lack of clarity of § 1329(a), *In re Coleman*, 231 B.R. at 399 interprets the statute to preclude claim reconsideration. In support of that conclusion, *Coleman* cites *In re Banks*, 161 B.R. at 378 for the proposition that "[a] debtor's confirmed plan is res judicata as to [valuation in] claims adjudications." *Coleman*, 231 B.R. at 399.

The absolutism of those court's declarations should be hedged for at least two reasons. First, it does not take into account § 502(j), which provides in part as follows:

> A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.

The express language of § 1329(a) does not preclude application of § 502(j), although it admittedly does not explicitly allow it either. However, § 103(a) makes § 502(j) applicable to chapter 13 cases without excepting from its application any portion of chapter 13.

The second problem with the *Coleman/Banks* argument is its assumption that res judicata means in effect that the plan cannot be changed. That assumption ignores § 1329, which clearly contemplates changes to a confirmed plan. The language of § 1327(a), that the "provisions of a confirmed plan bind the debtor and each creditor ..." cannot mean that the plan

cannot be altered; § 1329 says just the opposite.

Indeed, the concept of res judicata necessarily has limited application in the context of chapter 13 plans that can be amended. The doctrine of res judicata arose in and applies most obviously in other contexts, such as a traditional lawsuit to determine money damages. *See, for example, Griego v. Padilla (In re Griego)*, 64 F.3d 580, 584 (10th Cir.1995) (state court adjudication of damages for tort injuries). In such a circumstance, it is reasonable not to relitigate in bankruptcy court the issue of the liability and the amount of damages. *Id.* at 584–85. In this sense, certainly, the doctrine of res judicata is generally applicable in bankruptcy cases. *Id.* at 584, *citing DePaolo v. United States (In re DePaolo)*, 45 F.3d 373, 376 (10th Cir.1995). But as pointed out in both *Griego*, 64 F.3d at 584, and *DePaolo*, 45 F.3d at 376, the Code contains exceptions to the application of res judicata principles. In *DePaolo*, the exception was to the binding effect of a confirmed chapter 11 plan when the Internal Revenue Service sought to assess and collect additional taxes. *Id.* at 376. The same logic applies to chapter 13 which contemplates the possibility that a debtor's circumstances will change after the plan is confirmed, necessitating changes in the plan through § 1329. It is for that reason that *In re Jock*, 95 B.R. at 77, usefully points out that "Section 1327(a) is not a limit on permitted modification of a confirmed Chapter 13 plan; rather, it is a statutory description of the effect of a confirmed plan or of a confirmed modified plan." Thus, the doctrine of res judicata as it was used in cases such as *Banks*, 161 B.R. at 378, and *Coleman*, 231 B.R. at 399, is misplaced.[3]

---

**3.** Of course, it is true that the value of the collateral will ordinarily be fixed at or before the confirmation hearing, and the debtor's later changed circumstances will usually not suggest that the original valuation was in error.

Norton interprets the conflict in the two lines of cases (allowing or forbidding the debtor to surrender the collateral and make no further payments on the secured claim) as a dispute over "which party bears the risk that collateral will either be destroyed or substantially diminish in value postconfirmation." William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d, § 124:3 n. 7 and accompanying text (2001 Supp.) The answer to that question lies in § 1325(a)(5), which provides that if the creditor does not accept the plan, then either the debtor must surrender the collateral or the plan must leave the lien in place until the secured creditor has been paid no less than the value of the collateral as of the effective date of the plan. In other words, consistent with the Code's recognition and preservation of property rights in other chapters, for example, § 1129(b)(2)(A), (cramdown provisions for a secured claim in a chapter 11 plan), chapter 13 requires the debtor, or the estate, to either pay the value of the collateral or give it back. That requirement suggests that the risk of the sudden severe depreciation or loss of the collateral is a risk that the estate must bear.[4] Otherwise, every creditor would ordinarily demand a return of the collateral at or before confirmation, and reasonably so, since having the collateral's current liquidation value in hand obviously exceeds the same value of the collateral paid out over time with interest but reduced by the risk of the loss of the collateral.

But this analysis does not mean that the creditor has no role to play in the allocation of risk. The creditor has the obligation to ensure that, barring an unexpected and unrecoverable diminishment in value of the collateral, the payment stream and other provisions of the plan are sufficient to protect its interest in the collateral. In other words, the creditor has the obligation to insure that as time goes by and, as in this case, payments are not made and it repossesses the collateral, the value of the collateral when liquidated will equal the amount of the remaining claim. *In re Coleman,* 231 B.R. at 401, allocates the burden exactly the opposite:

> Had Debtor either correctly valued the collateral at the outset, when the plan was originally confirmed, or funded the secured claim at a rate equal to the depreciation of the collateral, he would not be faced today with this quandary.[5]

Placing the risk of loss so completely on the debtor or the estate, however, denies that the creditor has an obligation to look out for its own interests, and invites unscrupulous creditors to argue value at their whim after the confirmation hearing. In effect, therefore, the creditor needs to assure that the plan provides for a stream of payments such that at any time the value of the collateral, subject to normal wear and tear, when returned to it and liquidated, will equal the remaining amount of the secured claim. This may mean that the creditor will be entitled to a stream of payments that is shorter than the length of the plan if the creditor can show that the collateral will decrease in value more quickly than the declining balance of the debt amortized over the life of the plan. Alternatively, in that circumstance if the debtor chooses to pay the

---

4. Since the facts of this case do not involve a sudden severe depreciation of the collateral, the Court is not deciding this issue.

5. By the language cited above, *Coleman* seems to inadvertently concede that, were the collateral of sufficient value to pay the remaining debt, then a surrender of the collateral and no further payments on the debt would be permissible.

debt over the longer period of time, then the debtor will need to propose some additional adequate protection to make up for the decline in the value of the collateral. While that additional adequate protection might consist of an agreement between the debtor and creditor that a repossession and liquidation for less than the remaining value would not stop the payments to the creditor, the Court has no need to rule on that issue in the context of these facts. What is clear is that all parties, including the other creditors and parties in interest, are better off with the allocation of risk made up front, and available for examination and objection, than sorting out the problem after the fact.

Section 1329(b) makes clear that the standards for confirming a chapter 13 plan are applicable to a modification of any plan. In this context, the requirement that the modification be proposed in good faith, § 1325(a)(3), is particularly relevant. For example, were the debtor to fail to maintain insurance on a vehicle, and then lose the value of the collateral for that reason, or were the debtor to fail to reasonably care for the collateral, such as periodically changing the oil in the vehicle with a resultant loss of value, the motion to modify would probably be denied. 3 Keith M. Lundin, Chapter 13 Bankruptcy, § 264.1 at p. 264–17 (3rd Ed.).

The particular facts of this case are that Mr. Knappen failed to make the payments to retain the vehicle under the plan, and Ford voluntarily repossessed the vehicle. The parties did not stipulate to the Debtor's good faith or lack thereof. The parties have treated the issue entirely as a legal question. However, at the evidentiary hearing conducted by the Court on August 23, 2001, Mr. Knappen testified essentially without contradiction that he had attempted to keep the vehicle but could not make the payments on it, that it was repossessed by Ford without his permission, and that the vehicle had suffered only ordinary wear and tear. The Court therefore can and does find that the modification was proposed in good faith as required by Bankruptcy Code Section 1329(b)(1) (which incorporates Bankruptcy Code Section 1325(a); Section 1325(a)(3) requires that the plan be "proposed in good faith"). This finding and the Court's reasoning preclude the need for a finding of whether Ford may be entitled to an administrative claim for any depreciation to the value of the collateral in excess of the payments received during the Chapter 13 plan. Thus, the Court need not decide whether to adopt the reasoning of those cases that grant the secured creditor an administrative claim under Bankruptcy Code Section 503 to the extent that the value of the collateral has depreciated during the life of the Chapter 13 plan in excess of payments received.

The Court will therefore grant the motion to modify the chapter 13 plan and the confirmation order, to provide that the Debtor need make no more payments to Ford on its secured claim as of the date of the filing of the motion (March 29, 2001), *see* § 1329(b)(2) ("The plan as modified becomes the plan unless, after notice and hearing, such modification is disapproved."); payments due to Ford up until that time pursuant to the plan and confirmation order and not yet paid are still due to Ford. Ford may also file an amended proof of claim for the increased unsecured balance of its claim.