*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0407p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: MATTHEW ADKINS,

         *Debtor.*

---

DAVID WM. RUSKIN, Trustee,

        *Plaintiff-Appellant,*

   *v.*

DAIMLERCHRYSLER SERVICES NORTH AMERICA,
L.L.C., (Creditor),

        *Defendant-Appellee.*

No. 03-1087

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-71578—Paul D. Borman, District Judge.

Argued: April 21, 2004

Decided and Filed: October 4, 2005

Before: BATCHELDER and MOORE, Circuit Judges; CALDWELL, District Judge.[*]

---

## COUNSEL

**ARGUED:** Gordon S. Gold, SEYBURN, KAHN, GINN, BESS & SERLIN, Southfield, Michigan, for Appellant. Charles L. McKelvie, Troy, Michigan, for Appellee. **ON BRIEF:** Gordon S. Gold, Tova Shaban, SEYBURN, KAHN, GINN, BESS & SERLIN, Southfield, Michigan, for Appellant. Elizabeth M. Abood, Daniela Dimovski, SHERMETA, CHIMKO & KILPATRICK, Rochester Hills, Michigan, for Appellee.

   CALDWELL, D. J., delivered the opinion of the court, in which BATCHELDER, J., joined. MOORE, J. (pp. 11-13), delivered a separate dissenting opinion.

---

[*]The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

———————————

**OPINION**

———————————

KAREN K. CALDWELL, District Judge.  Plaintiff David Ruskin, Standing Chapter 13 Trustee for the Eastern District of Michigan ("Trustee"), appeals the district court's decision in favor of DaimlerChrysler Services North America, L.L.C. ("DaimlerChrysler"), in the Trustee's appeal from a decision of the bankruptcy court.  The Chapter 13 debtor, Matthew Adkins, had defaulted on his car payments, and DaimlerChrysler, holder of a claim secured by Adkins's car, moved to repossess the vehicle.  The Trustee argued that any debt remaining after the repossession and sale of the car at auction should be reclassified as an unsecured claim; DaimlerChrysler argued, and the bankruptcy court and the district court agreed, that this court's decision in *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000), foreclosed such a reclassification.  For the reasons explained below, we **AFFIRM** the district court's decision.

**I.      FACTUAL BACKGROUND**

On August 17, 2001, Adkins ("Debtor") filed a Chapter 13 petition and proposed plan.  On September 13, 2001, DaimlerChrysler filed a proof of claim secured by the Debtor's 1997 Plymouth Neon ("Neon") for $5,963.81 at 18.75% interest, valuing the Neon at $5,842.50.  The Debtor's proposed plan valued the Neon at $5,525.00, and proposed an interest rate of 12%.  DaimlerChrysler filed objections to the proposed plan based on the value and interest rate proposed by the debtor.

Following a confirmation hearing and resolution of both the Trustee's and DaimlerChrysler's objections, the bankruptcy court confirmed a plan ("the Plan") on November 8, 2001.  The confirmed Plan set the value of the Neon at $5,842.00; DaimlerChrysler's secured claim was subject to "cram down" to that amount under 11 U.S.C. § 1325(a)(5)(B)(ii), with the remaining deficiency balance transformed into an unsecured claim for $121.81.  The Plan provided that the $5,842.00 secured claim should be paid by 59 monthly payments of $136.00 and interest at 14% per annum.  The Plan provided that these payments on the secured claim would be paid by the Trustee from payments the Debtor made to the Trustee.  The Plan provided that general unsecured creditors receive no less than 100% on all filed claims.

Following confirmation, the Debtor failed to remit the payments to the Trustee as required by the Plan.[1]  DaimlerChrysler received no payments on its claims after December 6, 2001.  After more than sixty (60) days passed without any payments from the Debtor,  DaimlerChrysler moved for relief from the automatic stay to repossess and sell the Neon.  As part of that motion, DaimlerChrysler requested that any deficiency balance, or the difference between the amount still owed to it on the previously allowed secured claim of $5,842.00 and the proceeds from selling the Neon at auction, should be paid to it as a secured claim as set forth in the original confirmed Plan after filing an amended Proof of Claim.  The Trustee objected to the latter request, and a hearing was held.[2]  The bankruptcy court granted the motion for lifting the automatic stay and held that this court's decision in *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000),

———————————————

[1]There is nothing in the record before the Court that indicates why Debtor defaulted on his Plan payments.  The Trustee admitted that Debtor defaulted on payments to the Trustee.

[2]Debtor did not respond in writing to DaimlerChrysler's motion.  However, his attorney appeared on his behalf at a hearing before the bankruptcy court and represented to the bankruptcy court that Debtor "agreed" with the Trustee's objection.  Debtor ceded advocacy of the objection to the Trustee.

required that any deficiency resulting from the sale of the repossessed automobile be paid as a secured claim.[3]  *In re Adkins*, 281 B.R. 905, 910 (Bankr. E.D. Mich. 2002).

The Trustee then appealed to the district court, which initially refused to hear the appeal because the foreclosure had not yet taken place.[4]  Once "actual repossession, sale and assertion of a secured claim for the deficiency by Daimler Chrysler [sic]" took place,[5] the appeal was reinstated *nunc pro tunc*.  The district court had subject matter jurisdiction under 28 U.S.C. § 158.

On December 18, 2002, the district court affirmed the bankruptcy court's decision.  *In re Adkins*, 307 B.R. 880, 888 (E.D. Mich. 2002).  A timely notice of appeal was filed January 15, 2003.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## II.     LAW AND ANALYSIS

### A.     Standard of Review

This Court reviews a district court's statutory interpretation and conclusions of law de novo.  It reviews a bankruptcy court's factual findings for clear error.  *In re American HomePatient, Inc.*, 414 F.3d 614, 617 (6th Cir. 2005).

### B.     *In re Nolan*

The sole legal issue in this case is whether the bankruptcy court and district court correctly extended the principles this Court espoused in the case *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000), to the present situation in which a secured creditor repossesses a debtor's vehicle post-confirmation under court-ordered relief from the automatic stay.

In the *Nolan* decision, a Chapter 13 debtor moved under 11 U.S.C. § 1329 to surrender her car post-confirmation and reclassify any deficiency resulting from the sale of the surrendered car as an unsecured claim.  232 F.3d at 529-30.  Section 1329 allows modification of a Chapter 13 bankruptcy plan after confirmation of the plan but before completion of payments, on the motion of the debtor, the trustee, or the holder of an unsecured claim, to "increase or reduce the amount of payments on claims of a particular class provided for by the plan," to "extend or reduce the time for such payments," or to "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under

---

[3]The bankruptcy court ruled from the bench on the deficiency issue on April 11, 2002, then issued a written order lifting the stay on April 12, 2002.  The bankruptcy court issued a written opinion on the deficiency issue on June 18, 2002.

[4]According to the district court's order of dismissal, Debtor cured his original December 2001 default following the bankruptcy court's decision and continued making payments until August 2002.  After missing a required payment on August 17, 2002, however, Debtor was once again in default, but DaimlerChrysler had not yet repossessed the car when the district court initially denied the Trustee's appeal.  There is no evidence in the record before us as to why Debtor defaulted the second time.

[5]According to the record, DaimlerChrysler repossessed the Neon on September 16, 2002.  The repossession took place pursuant to the bankruptcy court's April 12, 2002, order lifting the automatic stay, even though Debtor had cured the previous default that led to that order.  However, the bankruptcy court's order did not limit the removal of the stay to a certain time period nor did it condition the lifting of the stay on Debtor's ability to cure default.
A written appraisal completed the day after DaimlerChrysler repossessed the Neon shows that the vehicle's front window was cracked, that the steering column was broken, and that the vehicle would not start.  DaimlerChrysler sold the car at auction for $800.  It is not evident from the record whether the vehicle was damaged before repossession, or whether it was damaged by the repossession company used by DaimlerChrysler.  The Trustee asserts in his brief that the Neon was driveable before repossession.

the plan." 11 U.S.C. § 1329(a).[6] Prior to *Nolan*, lower federal courts were split on whether section 1329 allowed a debtor to modify a confirmed plan by surrendering collateral to a secured creditor (the value of which typically would have already been subjected to "cram down"), and then reclassifying any deficiency resulting from the sale of the collateral as an allowed unsecured claim to be paid back at the generally reduced rate for unsecured creditors set forth in the plan. *See* 232 F.3d at 531-32 (noting split). What the *Nolan* court termed "a sizable minority" of lower courts[7] followed a rationale set forth in *In re Jock*, 95 B.R. 75 (Bankr. M.D. Tenn. 1989), that allowed such a surrender and reclassification under section 1329.

In *Nolan*, however, this Court held that section 1329 did not allow reclassification as an unsecured claim of a deficiency resulting from the sale of a vehicle surrendered post-confirmation, finding five "fundamental deficiencies" in the reasoning of *Jock* and its progeny.

First, *Nolan* found that "section 1329(a) does not expressly allow a debtor to alter, reduce, or reclassify a previously allowed claim," but rather only "affords the debtor a right to request an alteration of the *amount* or *timing* of specific payments." 232 F.3d at 532 (emphasis added). *Jock* and its progeny had interpreted section 1329(b)'s reference to section 1325(a),[8] which allows for

---

[6] The full version of section 1329 applicable to both *Nolan* and the present case reads as follows:
Modification of plan after confirmation.
(a)     At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to –
     (1)     increase or reduce the amount of payments on claims of a particular class provided for by the plan;
     (2)     extend or reduce the time for such payments; or
     (3)     alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
(b)(1)     Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
   (2)     The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
11 U.S.C. § 1329 (2000). In 2005, Congress added a subsection (a)(4) to allow modification to reduce payment amounts for the purpose of allowing the debtor to purchase health insurance. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 102(i), 119 Stat. 23, 34 (2005).

[7] *See, e.g.*, *Day v. Systems & Servs. Techs., Inc. (In re Day)*, 247 B.R. 898 (Bankr. M.D. Ga. 2000); *In re Anderson*, 153 B.R. 527 (Bankr. M.D. Tenn. 1993); *In re Rimmer*, 143 B.R. 871 (Bankr. W.D. Tenn. 1992); *In re Frost*, 96 B.R. 804 (Bankr. S.D. Ohio 1989).

[8] The version of 11 U.S.C. 1325(a) applicable to this case and *Nolan* provides as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if--
     (1)     the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
     (2)     any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
     (3)     the plan has been proposed in good faith and not by any means forbidden by law;
     (4)     the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
     (5)     with respect to each allowed secured claim provided for by the plan--
     (A) the holder of such claim has accepted the plan;
     (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
     (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
     (C) the debtor surrenders the property securing such claim to such holder; and

pre-confirmation surrender of collateral and classification of the deficiency as an unsecured claim, as allowing post-confirmation surrender and reclassification. *Nolan*, however, rejected this interpretation of section 1329(b). *Nolan* held that section 1329(b) does not apply unless the proposed modifications first comply with section 1329(a), and that section 1329(a) did not expressly allow reclassification of secured claims to unsecured claims. 232 F.3d at 535. In so holding, the *Nolan* court noted that while section 1325(a) allows surrender of collateral pre-confirmation, "[f]or section 1325(a)(5)(B)(ii) to provide any protection to the creditor when the debtor chooses to retain her collateral, the secured claim must not be subject to modification throughout the life of the plan." *Id.* at 533 n.8.

Indeed, the second principle on which *Nolan* reversed the *Jock* line of cases was the finding that the proposed modification "would violate section 1325(a)(5)(B), which mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed." 232 F.3d at 533. *Nolan* held that a post-confirmation surrender and subsequent reclassification is an attempt to bifurcate a claim that has already been classified as fully secured, and thus would negate the requirement in section 1325(a)(5)(B)(ii) that a plan is not to be confirmed unless the property to be distributed on account of a claim is not less than the allowed amount of the claim. *Id.*

Third, *Nolan* found that the proposed post-confirmation modification would violate section 1327(a),[9] which provides that a confirmed Chapter 13 plan is binding on debtor and creditor, and postulated "an unlikely congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset." 232 F.3d at 533. Allowing the post-confirmation surrender and reclassification, *Nolan* reasoned, would subject secured creditors to a double reduction of a secured claim in those cases where the creditor already experienced a "cram down" in valuation at the time of confirmation. *Id.* at 534. *Nolan* found that allowing debtors to experience such a windfall was unfair and found no evidence for congressional approval of such a result. *Id.*

Fourth, because section 1329(a) only allows the debtor, the trustee, and the holders of unsecured creditors to move for a modification under that section, the *Jock* interpretation of section 1329 would create an inequitable situation where the secured creditor could not move to reclassify its claim if the collateral securing the claim appreciates in value, but others can move to shift the burden of a collateral's depreciation in value to the creditor. *Id.*

Fifth and finally, *Nolan* held that using section 1329 to reclassify claims post-confirmation was at odds with the plain language of section 1329. "This section does not state that the plan may be modified to increase or reduce the amount of *claims*." 232 F.3d at 534 (quoting *In re Banks*, 161 B.R. 375, 378 (Bankr. S.D. Miss. 1993)) (emphasis in *Nolan*). *Nolan* noted that the Bankruptcy Code uses the terms "claim" (which is specifically defined in the Code) and "payment" (which is

---

(6)     the debtor will be able to make all payments under the plan and to comply with the plan.

[9] 11 U.S.C. § 1327 provides in full:

Effect of confirmation
(a)     The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
(b)     Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
(c)     Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

not) differently throughout the Code, thus making it less likely that Congress intended the word "claim" to be substituted for the word "payment" in section 1329. *Id.*

Based on these five reasons, *Nolan* held that "a debtor cannot modify a plan under section 1329(a) by: (1) surrendering the collateral to a creditor; (2) having the creditor sell the collateral and apply the proceeds toward the claim; and (3) having any deficiency classified as an unsecured claim." 232 F.3d at 535 (citing *In re Coleman*, 231 B.R. 397, 398 (Bankr. S.D. Ga. 1999)).

## C.     Application of *Nolan* principles to Post-Confirmation Repossession of Collateral

The Trustee contends that the bankruptcy court and district court erred by applying *Nolan* to the present case, because *Nolan* is factually distinguishable. In *Nolan*, the debtor voluntarily sought to modify her plan by surrendering her vehicle and having the deficiency reclassified as an unsecured claim. Given that the debtor in *Nolan* reported having frequent mechanical trouble with the vehicle and had put many, many miles on the vehicle, the Trustee argues, it was clear in *Nolan* that the debtor was seeking to shift the burden of depreciation (which she likely accelerated through her use and lack of maintenance) to the secured creditor. Here, the Trustee contends, it was DaimlerChrysler's decision to move to lift the automatic stay under 11 U.S.C. § 362(d)(1) and repossess the secured collateral. The Trustee contends that under the present circumstances, *Nolan* should not be applied to allow the treatment of any deficiency resulting from sale of the collateral as a secured claim for purposes of future distributions from the Plan. Allowing DaimlerChrysler to affirmatively repossess the vehicle and retain secured status in the Plan, the Trustee argues, would allow DaimlerChrysler an unfair "double recovery" and would also be unfair to the other unsecured creditors. The Trustee further contends that allowing DaimlerChrysler to retain secured status in the Plan after it repossesses and sells the collateral makes no sense under the Bankruptcy Code because a claim is only a "secured claim" under section 506[10] of the Code if the claim is "secured by a lien on property in which the estate has an interest." 11 U.S.C. § 506(a). Once DaimlerChrysler repossesses and sells the vehicle, the Trustee argues, the lien on estate property is extinguished.

DaimlerChrysler defends the lower courts' application of *Nolan* to the present case, contending that the factual distinctions between this case and *Nolan* are insignificant. It argues that even though DaimlerChrysler was the moving party procedurally in this case, in actuality Debtor brought DaimlerChrysler's action upon himself when he defaulted on his payments to the Trustee. DaimlerChrysler argues that the Trustee's objection to DaimlerChrysler's request to treat any deficiency following the repossession as a secured claim was essentially a motion to reclassify the deficiency as an unsecured claim and essentially a motion to modify the Plan under section 1329. Therefore, DaimlerChrysler argues, *Nolan* forbids reclassification of the deficiency in this circumstance.

We believe that whether the Trustee technically made a motion under section 1329 is not the key to the question of whether reclassification of secured claims post-confirmation is allowed in Chapter 13 bankruptcies. *Nolan*'s holding was not based solely on the language of section 1329. As discussed above, *Nolan* relied heavily on the language of sections 1325 and 1327.

---

[10]11 U.S.C. § 506(a), prior to its amendment by BAPCPA in 2005, provided as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

DaimlerChrysler emphasizes that section 1327 provides that once a plan is confirmed, its provisions bind the debtor and each creditor. Indeed, confirmation of a plan has been described as "res judicata of all issues that could or should have been litigated at the confirmation hearing." *In re Cameron*, 274 B.R. 457, 460 (Bankr. N.D. Tex 2002).

> Because all issues addressed during a plan confirmation are given preclusive effect, the bifurcation of a creditor's claim into a secured and an unsecured claim is likewise given preclusive effect. Thus if a creditor has an allowed secured claim of x dollars, which must be paid during the life of the plan, that issue has been litigated and cannot be altered.

*In re Coffman*, 271 B.R. 492, 495 (Bankr. N.D. Tex. 2002) (citations omitted).

The *Nolan* decision was also anchored on the provisions of section 1325(a)(5)(B), holding that this provision "mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed." 232 F.3d at 533. "For section 1325(a)(5)(B)(ii) to provide any protection to the creditor when the debtor chooses to retain her collateral, *the secured claim must not be subject to modification throughout the life of the plan*." *Id.* at 533 n.8 (emphasis added). In *Nolan*, this Court found that the debtor's proposed surrender and reclassification did not adequately protect a secured creditor because it allowed the debtor to shift the burden of depreciation she originally accepted when she chose to retain her collateral from herself to the secured creditor. This burden-shifting is especially unfair in those cases where the secured creditor has already borne the burden of depreciation resulting from a cram down of the secured claim over the creditor's objection. "The Code's cram down option displaces a secured creditor's state-law right to obtain immediate foreclosure upon a debtor's default." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 964 (1997).

> "When a debtor surrenders the property, a creditor obtains it immediately, and is free to sell it and reinvest the proceeds. . . . If a debtor keeps the property and continues to use it, the creditor obtains at once neither the property nor its value and is exposed to double risks: The debtor may again default and the property may deteriorate from extended use."

*Id.* at 962. The "adequate protection" interest payments made to the secured creditor for retention of the collateral do not always offset these risks. *See id.* at 963.

In the present case, allowing a reclassification following a repossession caused by Debtor's default also would allow the Debtor to shift the burden of depreciation back to the secured creditor, and possibly lead to a double reduction of Debtor's debt. Therefore, we believe *Nolan*'s ban against post-confirmation reclassifications equally applies to cases in which the Debtor's actions (i.e., default) have provided cause for the secured creditor to have the automatic stay lifted so the creditor may repossess the collateral.

### D.      Other court decisions that disagree with *Nolan*

We recognize that courts outside this circuit remain split on the issue following our decision in *Nolan*.[11] Those courts that have disagreed with *Nolan* have done so for differing reasons. Some courts simply disagree with *Nolan*'s interpretation of section 1329.[12] *See, e.g.*, *Bank One, NA, v. Leuellen (In re Leuellen)*, 322 B.R. 648, 654-55 (S.D. Ind. 2005); *In re Knappen*, 281 B.R. 714, 717 (Bankr. D.N.M. 2002); *In re Townley*, 256 B.R. 697, 699 (Bankr. D.N.J. 2000). Other courts agree that the language of section 1329 does not allow modifications that would reclassify a secured claim to an unsecured claim, but they disagreed with having a "secured claim" exist after the sale of the original collateral, pointing to section 506(a)'s characterization of an allowed claim as a "secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." *See, e.g.*, *In re Zieder*, 263 B.R. 114, 117 (Bankr. D. Ariz. 2001); *In re Taylor*, 297 B.R. 487, 491 (Bankr. E.D. Tex. 2003); *In re Mason*, 315 B.R. 759, 764 (Bankr. N.D. Cal. 2004). These latter decisions have thus advocated using 11 U.S.C. § 502(j) to reconsider the secured claim. Section 502(j) provides, in relevant part, "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. 502(j).

These cases, along with a number of cases that preceded our decision in *Nolan*, *see, e.g.*, *In re Johnson*, 247 B.R. 904 (Bankr. S.D. Ga. 1999), hold that the deficiency from a post-confirmation sale of collateral cannot be considered a "secured" claim and must be treated equally with other secured claims. In applying section 502(j), these cases interpret the portion of that statute which provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause" as permitting the court to reconsider the classification of a claim as secured or unsecured. If the request for reconsideration was made in good faith and led to an equitable result,[13] the court will generally reclassify the deficiency remaining on a secured claim as an unsecured claim.[14] *See, e.g., Johnson*, 247 B.R. at 909.

---

[11]Courts outside this circuit that have agreed with our approach in *Nolan* include *In re Barclay*, 276 B.R. 276, 282 (Bankr. N.D. Ala. 2001); *In re Coffman*, 271 B.R. 492 (Bankr. N.D. Tex. 2002); and *In re Wilcox*, 295 B.R. 155 (Bankr. W.D. Okla. 2003).

[12]For example, in *Bank One v. Leuellen*, the district court found that section 1329 contemplated post-confirmation reclassifications of secured claims because section 1329(b) referenced section 1323(c). 322 B.R. at 656. Section 1323(c) addresses the procedure for a secured creditor's acceptance or rejection of a proposed pre-confirmation modification that changes the secured creditor' rights from what they were before the proposed pre-confirmation modification. In *Nolan*, however, we held that section 1329(b) does not apply until a proposed post-confirmation first complies with section 1329(a). Because, *Nolan* found, section 1329(a) does not expressly allow modifications that reclassify secured claims to unsecured claims, section 1329(b) does not apply to a proposed post-confirmation reclassification.
    Other courts have interpreted the term "payment" in section 1329(a) more broadly than we did in *Nolan*. *See Knappen*, 281 B.R. at 717 ("The language of § 1329(a)(1) of the Code explicitly allows the debtor to 'reduce the amount of payments on claims of a particular class . . . .' Since each secured claim is general treated as a separate class, reducing to nothing the amount of payments on Ford's secured claim fits within the language of the statute.") (internal citations omitted).

[13]The *Johnson* court based the requirements of good faith and an equitable result on section 502(j)'s provision that "[a] reconsidered claim may be allowed or disallowed according to the equities of the case," section 1329(b)'s requirement that modified plans be made in good faith, and section 1325(a)(3) good-faith requirement for confirmation of proposed plan. 247 B.R. at 908-09.

[14]The *Johnson* court, however, recognized that reclassification under section 502(j) could unfairly allow debtors to shift unexpected depreciation of the value of the collateral to the secured creditor. Therefore, it suggested that a secured creditor could seek to have the deficiency considered as an administrative expense with priority over the other unsecured creditors. 247 B.R. at 909 (citing 11 U.S.C. § 507(a)(1), (b)).

However, as one bankruptcy court has noted, the literal language of section 502(j) addresses only the "allowance" or "disallowance" of claims, not the reclassification of an already-allowed claim. *See Coffman*, 271 B.R. at 497. Therefore, we cannot agree with the dissent's recommendation that the case be remanded for consideration under section 502(j). Furthermore, the dissent's view that § 506(a) counsels a different result is not relevant to our reasoning. The dissent's reliance on that section is made necessary only through the use of § 502(j), which we have stated is not applicable in this case.

Another case cited by the Trustee has allowed a reclassification of a secured claim following a post-confirmation sale of repossessed collateral without looking to either section 1329 or section 502(j). *See In re White*, 169 B.R. 526, 529 (Bankr. W.D.N.Y. 1994). Explicitly rejecting either provision and relying on what it termed as "common sense, common law, and custom and practice," *id.* at 529, the *White* court found that "[t]he lien that the secured creditor retains by virtue of 11 U.S.C. § 1325(a)(5)(B) is precisely what a lien is expected to be at common law." *Id.* at 530. "When a 11 U.S.C. § 362(d) motion [to lift the automatic stay] is properly made and granted, it is usually explicitly recognized (and always implicitly recognized) that the grant of the motion relegates the parties to their State Law rights." *Id.* at 529. Therefore, the *White* court found that any deficiency resulting from the post-confirmation sale of repossessed collateral was automatically converted to an unsecured claim, that a creditor's claims under the confirmation plan are "deemed amended." *Id.* at 530.

The *White* court, however, cited no authority for these holdings. We do not find it "obvious" that the secured creditor who retains a lien under pre-BAPCPA section 1325(a)(5)(B)[15] enjoys the same creditor rights he did prior to the debtor's bankruptcy filing. *See Rash*, 520 U.S. at 964 ("In allowing Chapter 13 debtors to retain and use collateral over the objection of secured creditors, however, the Code has reshaped debtor and creditor rights in marked departure from state law."). Moreover, the *White* court's logic explicitly allows a secured creditor to retain any appreciated gain remaining from the sale of repossessed collateral, *id.* at 530, a result that no other court has recognized. *See, e.g.*, *Nolan*, 232 F.3d at 534 (criticizing *Jock* for creating "an inequitable situation where the secured creditor could not seek to reclassify its claim in the event that collateral *appreciated*, even though the debtor could revalue or reclassify the claim whenever the collateral *depreciated*.") (emphasis in original). Therefore, we do not find *White* persuasive.

We recognize the frustration certain commentators have with our allowing a secured claim to remain classified as "secured" following the sale of the underlying collateral.[16] However, as explained above, we find that there exists no provision in the Code applicable to this case that would allow a reclassification of the deficiency given the "binding effect" of the confirmed plan under 11 U.S.C. § 1327. Therefore, in accordance with our prior decision in *Nolan*, we find that where the Debtor's actions (i.e., default) provide cause for lifting the automatic stay under section 362(d), the

---

[15]In 2005, Congress amended section 1325(a)(5)(B) to specifically provide that the holder of a secured claim "retain[s] the lien securing such claim until the earlier of (aa) the payment of the underlying debt determined under nonbankruptcy law; or (bb) discharge under section 1328." The new 1325(a)(5)(B)(i) also provides that if a chapter 13 case is "dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law." BAPCPA, Pub. L. No. 109-8, §§ 306(a), 1501, 119 Stat. 80, 216.

[16]*See, e.g.*, 8 COLLIER ON BANKRUPTCY ¶ 1329.04[1], 1329-8 through 1329-9 (15th ed. rev. 2004). *But see* 5 NORTON BANKR. L. & PRAC. 2D § 124:3, n. 94 ("Mere dismissal of the applicability of the rule of res judicata to a secured claim dealt with by a confirmed plan is unconvincing, for it appears that both creditor and debtor should be able to rely on the confirmed plan's treatment of the claim, subject only to possible modification of the 'amount' or the 'time' of payments on the secured claim.").

Debtor or Trustee generally cannot move to reclassify the deficiency resulting from the sale of the underlying repossessed collateral as an unsecured claim.[17]

## III.  CONCLUSION

For the foregoing reasons, the decision of the district court is **AFFIRMED**.

---

[17]We share the Trustee's concern that there may be cases in which a portion of the deficiency is the result of damage done to the collateral *by the creditor or its agents* in the course of, or following, repossession of the collateral. The Trustee believes DaimlerChrysler's repossession of the Neon caused the broken steering column and led to the vehicle being sold at auction for only $800, but there is no evidence in the record before us proving this. However, secured creditors should not assume that our decision herein allows them to "run up" the amount of the remaining deficiency through the reckless or careless actions of a repossession agent. We decline to rule whether the bankruptcy court may take damage done to collateral during and after repossession by the creditor  into account in reviewing a creditor's amended Proof of Claim after the collateral's sale.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting. Because I do not believe that *Nolan* is controlling in this instance, I respectfully dissent. In *Nolan*, we held that a Chapter 13 debtor cannot modify a confirmed plan under 11 U.S.C. § 1329(a) by voluntarily surrendering the property securing the debt to the creditor, requiring the creditor sell that collateral and apply the sale proceeds toward its secured claim, and classifying any deficiency as an unsecured claim. *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 535 (6th Cir. 2000). Our decision in *Nolan* was motivated by our belief that debtors should not have "wide latitude to subject the creditor to their whims throughout the life of the plan" nor the ability to "reap a windfall by employing a subterfuge" by unfairly shifting the costs of depreciation to the creditor. *Id*. at 534. Our holding in *Nolan* was narrowly tailored to the particular facts and circumstances of that case, and therefore I disagree with the majority's decision to extend its holding beyond those boundaries. Because in this case the collateral was involuntarily taken from the debtor by the creditor's conscious decision to seek relief from stay and to sell the collateral to satisfy its secured claim, I must dissent from the majority's decision to extend *Nolan*. *See In re Goos*, 253 B.R. 416, 419 n.5 (Bankr. W.D. Mich. 2000)(stating that a creditor-initiated sale may require a different legal analysis than a debtor-initiated surrender).

Our decision in *Nolan* rejected "a sizable minority" of lower courts that followed the rationale set forth in *In re Jock*, 95 B.R. 75 (Bankr. M.D. Tenn. 1989), which allowed a debtor to initiate surrender of collateral and for any deficiency to be deemed an unsecured claim. In *Nolan* we explained five "fundamental deficiencies" of following the *Jock* line of cases in that situation, each of which stemmed from our concern about the debtor's manipulation of the Bankruptcy Code to surrender the collateral after the collateral has depreciated, thereby unfairly shifting the risk of depreciation to the creditor. Three of the deficiencies that necessitated our conclusion in *Nolan* related to our disagreement with *Jock*'s interpretation of § 1329. *Nolan*, 232 F.3d at 532-35. That provision of the code is not involved here. DaimlerChrysler's suggestion that a § 1329 modification is implicitly at issue here — that the Trustee's objection to its attempt to maintain a secured claim after the sale of the collateral is essentially an attempt to modify the plan without a formal § 1329 motion — is not persuasive. Appellee Br. at 25. This case arose not from an attempted modification brought by the debtor or Trustee through a § 1329 motion, but rather from DaimlerChrysler's § 362 motion to lift the stay and its request therein that any deficiency be classified as a secured claim. Unlike in *Nolan*, where the creditor would have preferred to continue to receive payments for its secured claim through the plan rather than have the collateral sold, here the creditor was the party moving to initiate the sale. Believing that its interests were not being adequately served through the plan, DaimlerChrysler moved to lift the stay preventing it from repossessing the collateral, thus enabling it to pursue its state-law remedies outside the plan.

The other two deficiencies cited in *Nolan* were also specific to the debtor-initiated surrender attempted in that case. There we were concerned that the debtor seeking a § 1329 modification in those circumstances may contravene the requirements in §§ 1325(a)(5)(B) and 1327(a) that govern a plan's confirmation and its res judicata effect. *Nolan*, 232 F.3d at 533-34. In this case, the debtor did not seek to surrender the collateral nor to disturb the confirmed plan. Instead it was the creditor who decided its interests were better served by obtaining its state-law remedies to repossess the collateral, and therefore the creditor moved to redeem its secured claim outside the plan.

In extending the holding in *Nolan* to allow a creditor who initiated sale of the collateral to recover any deficiency as a secured claim, the majority entirely relieves the creditor of any obligation to protect its own interests against anticipated depreciation in its pre-confirmation dealings. On the contrary, I believe that "the creditor has the obligation to ensure that as time goes

by and, as in this case, payments are not made and it repossesses the collateral, the value of the collateral when liquidated will equal the amount of the remaining claim." *In re Knappen*, 281 B.R. 714, 719 (Bankr. D.N.M. 2002). Placing the risk of depreciation loss completely on the debtor, as the majority does:

> denies that the creditor has an obligation to look out for its own interests, and invites unscrupulous creditors to argue value at their whim after the confirmation hearing. In effect, therefore, the creditor needs to assure that the plan provides for a stream of payments such that at any time the value of the collateral, subject to normal wear and tear, when returned to it and liquidated, will equal the remaining amount of the secured claim.

*Id*. at 719. DaimlerChrysler had the opportunity to object to confirmation of the plan if it believed that the plan payments, coupled with the sale value of the collateral if repossession became necessary, would be insufficient to cover the costs of normal depreciation. If DaimlerChrysler incurred a loss due to normal depreciation upon the subsequent sale of its collateral, which unlike the creditor in *Nolan*, it instigated at the timing of its choice, that loss occurred not because the burden of depreciation had been shifted to it, but because it failed to meet its own burden of objecting to confirmation of a plan that did not provide protection from the normal depreciation of the collateral. *See In re Zieder*, 263 B.R. 114, 118-19 (Bankr. D. Ariz. 2001).

In addition to relieving creditors of their obligations to protect their own interests pre-confirmation, the majority's holding creates a second disincentive for creditors to act diligently. By guaranteeing creditors the payment of the entire amount deemed secured at the time of confirmation regardless of what the sale of collateral brings, the majority eliminates any incentive for creditors who force a sale of collateral to take care to protect the value of the collateral throughout the repossession process. Applying *Nolan* to the facts in this case allows a creditor to shift the risk of loss totally to the debtor, thereby turning the debtor into a guarantor. Debtors, not creditors, will bear the costs of reckless or careless repossession agents hired by the creditors.

Because I believe that our decision in *Nolan* does not require us to hold that the post-sale deficiency in this case must be a secured claim, I would instead hold that after a creditor-initiated sale of collateral, any deficiency claim should be reconsidered under 11 U.S.C. § 502(j). Section 502(j) states that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." Bankruptcy courts have wide discretion to determine what constitutes cause for reconsideration of claims under § 502(j). *Colley v. Nat'l Bank of Texas (In re Colley)*, 814 F.2d 1008, 1010 (5th Cir.)(calling a bankruptcy court's discretion to reconsider a claim under § 502(j) "virtually plenary"), *cert. denied*, 484 U.S. 898 (1987). I believe that the sale of the collateral at the instigation of the secured creditor is adequate cause to reconsider a previously allowed secured claim under § 502(j). *See In re Mason*, 315 B.R. 759, 761 (Bankr. N.D. Cal. 2004)("liquidation of the collateral by the secured creditor is adequate cause to reconsider a previously allowed secured claim" under § 502(j)); *In re Dykes*, 287 B.R. 298, 303 (Bankr. S.D. Ga. 2002)(granting relief from automatic stay to repossess and sell collateral is sufficient "cause" to reconsider under § 502(j)); *Zieder*, 236 B.R. at 117. I would therefore reverse the district court's decision, and remand to the bankruptcy court to treat as a § 502(j) motion for reconsideration the Trustee's objection to the lifting of the stay and classification of the deficiency as a secured claim.

When reconsidering a claim under § 502(j), a court may readjust the claim in any fashion that the equities of the case deem necessary. *Id*. Reconsideration under § 502(j) can occur even after a plan is confirmed. *See Int'l Yacht & Tennis, Inc. v. Wasserman (In re Int'l Yacht & Tennis, Inc.)*, 922 F.2d 659, 662 n.5 (11th Cir. 1991)(stating that the probable intent of a 1984 amendment to § 502(j) was to allow claims to be reconsidered after a case has been closed and reopened); *Dykes*,

287 B.R. at 303 (stating that after confirmation, a "§ 502(j) 'motion to reconsider' is the only means by which a claim's continued validity may be questioned"); *In re Gomez*, 250 B.R. 397, 400 (Bankr. M.D. Fla. 1999)(stating that § 502(j) creates a narrow exception to the res judicata effect of § 1327 that allows reconsideration after confirmation). A § 502(j) analysis of a deficiency can also account for a debtor who contributed to depreciation loss in bad faith. A bankruptcy court can determine that the deficiency amount can only be treated as an unsecured claim if the request is in good faith and leads to an equitable result. *Zieder*, 263 B.R. at 119 (stating if excess depreciation is due to fault of debtor, creditor may object to § 502(j) modification for lack of good faith); *In re Johnson*, 247 B.R. 904, 908-09 (Bankr. S.D. Ga. 1999). Furthermore, when a reconsideration under § 502(j) renders a deficiency as unsecured, a creditor may be entitled to an administrative-expense claim for failure of adequate protection, which "has priority over unsecured claims and is paid in full. 11 U.S.C. § 507(a)(1) & (b)." *Id.* at 909.

Finally, I believe that the plain language of § 506(a) necessitates the conclusion that any deficiency remaining after the secured creditor has initiated a sale of collateral must not be treated as a secured claim, and therefore must be reconsidered under § 502(j). Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property*, or to the extent of the amount subject to setoff, as the case may be, *and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.* Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added). The Supreme Court has repeatedly cited § 506(a) as the basis for the tenet that a claim is secured only to the extent that it is secured by an interest in collateral. *See, e.g.*, *Till v. SCS Credit Corp.*, 541 U.S. 465, 470 n.5 (2004); *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 956, 960 (1997). To hold otherwise, as the majority does, would turn the definition of a secured claim on its head. The majority does not explain why § 506(a)'s definition of a secured claim can be ignored in these circumstances. Here DaimlerChrysler initiated the sale of the collateral that secured its claim, and therefore by definition, its claim is no longer secured. There is no provision in the Bankruptcy Code that gives a creditor a secured claim without any collateral. *See Zieder*, 263 B.R. at 117. I respectfully dissent.