### In re Michael W. DISNEY, Debtor.

### No. 06–16712 HRT.

United States Bankruptcy Court, D. Colorado.

March 18, 2008.

---

David M. Miller, Jenny M.F. Fujii, Lee M. Kutner, Denver, CO, for Debtor.

## ORDER ON DEBTOR'S MOTION TO RECLASSIFY CLAIMS AND MODIFY PLAN

HOWARD R. TALLMAN, Chief Judge.

This case comes before the Court on *Debtor's Motion for Post–Confirmation Modification of Confirmed Chapter 13 Plan Pursuant to 11 U.S.C. § 1329* (docket # 110) [the "Motion to Modify"]. The Motion to Modify is opposed by Kimberly Fields, now known as Kimberly Doss ["Fields"] and Henry Doss ["Doss"] who filed *Objection to Debtor's Second Amended Chapter 13 Plan Including Valuation of Collateral Dated August 24, 2007* (docket # 117). The plan at issue was filed by the Debtor on August 27, 2007, and is captioned as *Second Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims, August 24, 2007* (docket # 114) [the "Modified Plan"].

On January 28, 2008, the Court held a hearing on the Motion to Modify. Shortly thereafter, Debtor filed his *Motion to Reclassify Proofs of Claim # 3 (Filed by Bank of New York as Trustee for the Certificateholders CWABS 2005–9), # 6 (Filed by Electrical Credit Union), # 13 (Filed by Electrical Credit Union), # 13 (Filed by Kimberly Doss) and # 14 (Filed by Henry Doss) Pursuant to 11 U.S.C. § 502(j) and Fed.R.Bankr.P. 3008* (docket # 134) [the " § 502(j) Motion"]. The § 502(j) Motion was accompanied by a notice giving the affected parties until March 5, 2008, to file responses and request a hearing. Fields and Doss timely filed their *Objection to Debtor's Motion to Reclassify Proof of Claim # 13 (Kimberly Doss) and # 14 (Henry Doss) Pursuant to 11 U.S.C. § 502(j) and Fed.R.Bankr.P. 3008.* (docket # 137). The Court has reviewed that objection to the § 502(j) Motion. The arguments presented at the hearing on the Motion to Modify also go to the issues presented by the § 502(j) Motion. No purpose would be served by scheduling an additional hearing with respect to that objection. In the interest of judicial economy, and because the issues presented by the Motion to Modify and the § 502(j) Motion are intertwined, the Court will consider both matters in this Order.

## I. BACKGROUND

Fields is a creditor of the Debtor. Her proof of claim filed on February 16, 2007, reflects a claim in the total amount of $183,335.00. She characterizes $55,000.00 of that total as an unsecured debt based on a purchase agreement between herself and Black Diamond Electric, Inc., for which the debtor signed as "Owner/President." The remaining $128,335.00 of her claim is characterized as a debt secured by real property. The accompanying promissory note reflects a loan in the amount of $100,000.00 secured by a deed of trust encumbering the Debtor's residence. The deed of trust was filed with the Boulder County Clerk on June 7, 2005. On August 3, 2007, Fields filed an amended proof of claim and a notice of claim transfer. The notice reflects that she assigned 10% of her claim to Doss and the amended proof

of claim simply reduces her claim to 90% of the original amount. At the same time, Doss filed a proof of claim for an amount corresponding to 10% of Fields' original claim. Hereinafter, as a matter of convenience, the Court will use only Fields' name in referring to the debts or the lien referenced in these claims. There is no dispute that the Fields' lien was subordinate to that of a first mortgage holder.

The Modified Plan is the fourth plan document filed in this case. Debtor filed his *Chapter 13 Plan Including Valuation of Collateral and Classification of Claims* (docket # 12) [the "Original Plan"] on October 5, 2006, shortly after the case was filed; Debtor's *First Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims* (docket # 30) [the "Amended Plan"] was filed on November 27, 2006; a *CORRECTED First Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims* (docket # 34) [the "Corrected Amended Plan"] was filed on December 7, 2006; and finally, the Modified Plan was filed on August 27, 2007.

The posture of this case is regrettable. Through inadvertence on Debtor's part, the Corrected Amended Plan was confirmed under circumstances which failed to fully apprise Fields of the treatment of her claim.[1] The Court found no bad faith or other grounds to revoke the confirmation order.[2] Nonetheless, it could not find that the plan could be accorded binding effect as to an existing creditor who had not received adequate notice. As a consequence, the Court did not disturb the confirmation order, but did hold that Fields was not bound by the provisions of the plan. In a separate proceeding, the Court granted Fields' motion for relief from stay so that she could take whatever measures she had available to her under state law to protect her security interest in Debtor's residence.

Subsequently, after it obtained relief from the automatic stay, the first mortgage holder foreclosed on the property and Fields' lien on the residence was extinguished. Now, the Debtor seeks to modify his confirmed plan. The Modified Plan reflects the foreclosure of the first mortgage on his residence and the surrender of a Jeep motor vehicle. Specifically, as to Fields, the Modified Plan reflects that her claim is not to be paid as a secured claim, but will be paid as an unsecured claim, along with other creditors whose claims

---

1. Fields did receive notice of the Debtor's Amended Plan which: 1) provided that Fields would retain her lien until the Debtor receives his discharge; 2) valued Fields' secured claim at $0 and provided she would receive no payment on her secured claim; and 3) provided that Fields' claim is wholly unsecured and would be treated as a general unsecured claim. Subsequently, the Debtor filed his Corrected Amended Plan. As to Fields, the Corrected Amended Plan eliminated the internal inconsistency of providing for lien retention and also asserting that her claim was wholly unsecured; it simply provided that Fields' claim was an unsecured claim. Fields did not receive notice of the Corrected Amended Plan.

2. The Court's ruling is contained in the Minutes of Proceeding dated August 13, 2007, (docket # 107). Part of the reason that the Court found no indication of bad faith in the failure to serve the Corrected Amended Plan on Fields was that, consistently in each plan filed in this case, the Debtor has taken the position that the Fields' claim had no value. Each plan has contained the bolded and underlined statement that *"Kimberly Fields is wholly unsecured and will be treated in this Plan as a General Unsecured Class 4 Creditor."* Thus, elimination of the lien retention language was more in the nature of a technical correction than a change in how Fields was to be treated in the Debtor's plan. While that is certainly a matter that Fields was entitled to receive notice of, it provided the Court with no evidence of bad faith.

were secured by the property. All of those formerly secured creditors must file amended claims that take into account the surrender or foreclosure of their collateral.

The Corrected Amended Plan is not binding with respect to the Fields claim. The principal consequence of that status is that, although Fields is scheduled to receive payment with the Class IV unsecured creditors, her claim is not discharged by operation of Debtor's plan. The Debtor's proposed modification not only accurately reflects the status of secured claims where collateral has been foreclosed or surrendered but, with proper notice to Fields, it is designed to bring her claim back into the fold to not only receive payment with the other unsecured creditors, but to also be subject to the Debtor's discharge.

## II. DISCUSSION

### A. Can Fields be Bound by Modified Plan?

■ Counsel for Fields first argues that a creditor who is not bound by a confirmed plan may not be bound by a post-confirmation modification to that plan. The argument has some logical appeal but ignores the history of this case. At the hearing in this case held on August 13, 2007, the Court directed the Debtor to make the modifications that are the subject of this current Modified Plan. The Court was explicit in its desire to get this case back on track. It will not now hold that the modifications that it directed the Debtor to make are ineffective to accomplish that purpose. Fields was in the courtroom at the time; she was fully informed that the Debtor was under instructions to file the instant modification; she received service of the Modified Plan; she registered her objection to the plan; and has taken part in the hearing to consider the modification.

Nor is the Court fond of making rulings that elevate form over substance. Fields has been unsuccessful in demonstrating the Debtor's bad faith or fraud in this proceeding. Consequently, the Debtor is entitled to pursue a chapter 13 reorganization. That will occur in the current case by addressing the merits of the treatment that the Debtor proposes for the creditors covered by the Modified Plan. If the Court were to make this case impossible to pursue, by ruling that there is nothing the Debtor can do to deal with his most active creditor in the current case, then it will surely happen in a subsequently filed case. By forcing the Debtor to perform those procedural gymnastics, both parties would be out additional money with no substantive result.

### B. Can Fields' Claim be Recharacterized in Debtor's Modified Plan

As to the merits, the parties have presented the Court with a question upon which the case law is inconsistent. Both parties agree that the substantive question before the Court is purely a question of law. There is no disagreement as to the relevant facts. The question is whether a debtor is permitted, under chapter 13, to recharacterize an allowed secured claim post-confirmation following surrender or seizure of the collateral securing the claim, and modify a confirmed plan accordingly.

There is a fair debate on the question of what happens to a secured claim in a chapter 13 case after a post-confirmation surrender or seizure of the collateral. The only circuit level authority on the subject comes from the Sixth Circuit. That court holds that treatment of such a claim is fixed in the confirmed plan and that recharacterizing a secured claim under those circumstances is not one of the permissible reasons to approve a modification under § 1329. *In re Adkins,* 425 F.3d 296, 302–

303 (6th Cir.2005); *In re Nolan*, 232 F.3d 528, 529–35 (6th Cir.2000). Collier discusses problems with *Nolan* and *Adkins* line of cases. 8 COLLIER ON BANKRUPTCY ¶ 1329.04[1] (rev. 15th ed.2007); *contra* 7 NORTON BANKRUPTCY LAW AND PRACTICE § 150:3 (3rd ed.2008).

### 1) Nolan and its Progeny

Some courts have lined up behind the Sixth Circuit's *Nolan* line of cases, but others have not. A bankruptcy court in Colorado is not bound by a decision of the Sixth Circuit Court of Appeals, but neither can this Court lightly dismiss such circuit level authority.

The bankruptcy case that led to the *Nolan* decision was filed in 1997, several years before BAPCPA's anti-modification provisions applicable to certain personal property took effect. The secured automobile creditor filed a proof of claim for $12,291.45. The debtor's plan valued the vehicle at $8,200.00. Under pre-BAPCPA provisions of chapter 13, the debtor was entitled to treat that claim as secured to the extent of $8,200.00 and to pay the remainder of the claim as an unsecured claim. The plan satisfied the requirements of chapter 13 and was confirmed.

About a year later, claiming that the vehicle no longer provided reliable transportation, the debtor sought to surrender it to the secured creditor and to acquire a replacement vehicle. The debtor proposed a modified plan that would have applied whatever amount the creditor could obtain upon liquidation of the vehicle to satisfaction of the secured claim and any remaining amount of the secured claim would be reclassified as unsecured.

The bankruptcy court rejected the creditor's claim of bad faith and allowed the debtor's modification. The district court reversed on the basis that § 1329 does not permit the proposed modification. That decision was further appealed to the Sixth Circuit.

The Sixth Circuit's discussion in *Nolan* centers upon the consequence of allowing such modifications as opening up an opportunity for debtors to manipulate the system by using the collateral post-confirmation until all the value has been wrung out of it, then surrendering the collateral and modifying the plan to reduce the payment to the secured creditor. Thus, in the Sixth Circuit's view, the burden of the collateral's depreciation is unfairly shifted to the secured creditor. Under *Nolan's* rationale, once a secured claim has been treated in a confirmed plan, that claim is fixed for the life of the plan and the only modification possible would only go to the amounts or timing of payments under the plan; but the classification and amount of the claim could not be altered.

In the case of *In re Adkins*, 425 F.3d 296 (6th Cir.2005), the Sixth Circuit later extended that rationale to the much more prevalent circumstance of plans seeking to modify the treatment of a secured creditor who has obtained relief from the automatic stay and foreclosed its interest in collateral. The Sixth Circuit affirmed lower court decisions that required the debtor to pay the deficiency remaining after foreclosure of the collateral as a secured claim. *Id.* at 305.

### a) Nolan's Statutory Analysis

The *Nolan* court begins its analysis by asserting that § 1329(a) "does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim." *In re Nolan*, 232 F.3d at 532. While that may be, by the same token, it does not expressly disallow such modifications. More importantly, nowhere in the text of § 1329 does it distinguish between modifications permitted with respect to se-

cured claims as opposed to unsecured claims.

One circumstance that arises from time to time in a chapter 13 context is when a secured creditor's collateral is damaged and the creditor, as the loss payee on the insurance policy, receives a payment from the casualty insurer to compensate for that damage. The limitation suggested by *Nolan* would prevent modification of the plan under § 1329 even though the creditor has received payment for some portion of its secured claim from that source. Such a circumstance would appear to fall squarely within the plain language of § 1329(a)(3), which permits modifications to take into account payments received from a creditor from sources other than under the plan. Could Congress really have intended such a windfall for secured creditors at the expense of the unsecured creditors without saying so? To reach that result requires judicially engrafting a limitation onto § 1329 that Congress did not specifically provide for.

Next, the *Nolan* court asserts that § 1325(a)(5)(B) "mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed." The court correctly notes that chapter 13 confirmation requires that a secured creditor's payments under the plan may not be less than the amount of its allowed secured claim. But, the mandate that the *Nolan* court finds in § 1325(a)(5)(B) is absent from statutory language and is contrary to other Code provisions found in §§ 502 and 1329.

Congress has provided a clear mechanism whereby a claim may be reconsidered after it has been allowed. Section 502(j) uses broadly discretionary language. A bankruptcy court may reconsider a claim "for cause." Congress chose not to limit the circumstances under which a court may reconsider a claim, but used the broad "for cause" language that requires the bankruptcy court to examine the circumstances on a case by case basis to determine if cause exists. *See In re Ross,* 373 B.R. 656, 662 (Bankr.W.D.Mo.2007). Moreover, § 502(j) directs a court to allow or disallow the reconsidered claim "according to the equities of the case." Again Congress declined to prescribe the particular kinds of modifications a court could make to a claim, but directs a bankruptcy court to use its discretion to examine the equities of the situation that appears before it. Importantly, the plain language of § 502(j) is devoid of language imposing a temporal limitation on a party's right to move to have a claim reconsidered, nor does any limitation appear in the statute that withdraws the right to move for such a modification after a plan has been confirmed.

Also, section 1329(a) itself contradicts the mandate found by the *Nolan* court. It allows modification of a chapter 13 plan to "increase or reduce the amount of payments on claims of a particular class provided for by the plan," 11 U.S.C. § 1329(a)(1); to "extend or reduce the time for such payments," 11 U.S.C. § 1329(a)(2); and to modify the treatment of an individual claim "to take account of any payment of such claim other than under the plan." 11 U.S.C. § 1329(a)(3). To judicially construct a limitation on that section, excluding secured claims from operation of the statute, alters § 1329 in a manner that Congress chose not to.

In *Nolan* the court was silent with respect to a court's authority under § 502(j) to reconsider a claim. But, in the later *Adkins* case, the Sixth Circuit does address § 502(j). In that case, the Sixth Circuit endorses the reasoning found in *In re Coffman,* 271 B.R. 492 (Bankr.N.D.Tex. 2002). The *Coffman* court held that a bankruptcy court's equitable determination

under § 502(j) is strictly limited to reversing the original decision to allow or disallow a claim and does not reach revaluation or reclassification of claims. *Id.* at 497. Alternatively, the *Coffman* court argues that standards for cause to grant relief from judgment in FED.R.CIV.P. 60(b), incorporated by FED. R. BANKR.P. 9024, are applicable to the "for cause" determination in § 502(j) and that surrender of collateral does not constitute cause under that standard.

This Court cannot harmonize the language that appears in the statute with that restrictive interpretation. First of all, under § 502(b), both the evaluation and classification of a claim are integral to the process of allowance or disallowance. This Court cannot find the Congressional intent to limit bankruptcy courts to merely reversing the decision to allow or disallow the claim in the process of reconsideration under § 502(j). That is especially so where Congress has specifically invoked the bankruptcy court's discretion to consider the equities of the request and in light of the fact that evaluation and classification of a claim are inextricably bound to the decision to allow or disallow a claim.

Nor is it clear to this Court that Rule 60(b) provides the relevant standard for cause under § 502(j). Certainly, long before the appearance of the Bankruptcy Code in 1978, federal courts had the power to relieve parties from a judgment under Rule 60 and that rule has been incorporated into the bankruptcy rules by FED. R. BANKR.P. 9024. Thus, the Rule 60(b) standards for relief from judgment have already been incorporated into bankruptcy procedure applicable to a wide range of orders issued under the Bankruptcy Code. Under the *Adkins* and *Coffman* courts' view, the power of a court to reconsider claims under § 502(j) would be limited to a puzzling, and quite unnecessary, duplica-

tion of a power that all federal courts have traditionally exercised since long before the Bankruptcy Code was drafted.

Moreover, these cases of collateral being surrendered or foreclosed graphically demonstrate the difficulty with an interpretation that does not allow a court to fully reconsider a claim under § 502(j). Even in a case where a court might find inequitable conduct on the part of the debtor such that reclassification of any portion of the secured claim is unsupportable, it must, at minimum, be able to revalue the allowed amount of a claim where the creditor has liquidated the collateral. The court under those circumstances must be able to revalue the claim to take into account the liquidation proceeds received by the secured creditor. To do otherwise would levy an unconscionable penalty on unsecured creditors and grant a windfall to a foreclosing secured creditor.

### b) *Nolan's Policy Analysis*

The *Nolan* court discussed at length the injustice of a debtor's opportunity to manipulate the system by using the collateral post-confirmation and then surrendering it and modifying his plan after the collateral has been significantly devalued. That assumes a remarkable deviousness combined with a financial sophistication that this Court rarely observes in its population of chapter 13 debtors.

This Court's experience with the cases that come before it suggests that the *Nolan* court's fears are theoretical only. In fact, it is much more characteristic that debtors stretch themselves to the limit to try and keep homes and cars which are frequently worth much less than the secured debts associated with them. More importantly, a jarring omission from the *Nolan* analysis is its lack of any discussion of a secured creditor's right to receive

adequate protection with respect to the value of its lien interest.

The *Nolan* court argues that, where a creditor's collateral is depreciating, a post-confirmation surrender of collateral and reclassification of the claim unfairly shifts the burden of that depreciation from the debtor to the creditor. Yet, it is only a creditor who sits on its rights and ignores its statutory right to receive adequate protection that places itself in that position.[3] After all, lack of adequate protection constitutes explicit grounds for relief from the automatic stay under § 362(d)(1). But, more to the point, adequate protection is an essential component of a secured creditor's treatment under a chapter 13 plan. The Sixth Circuit has recognized this fact. In the case of *In re Nichols,* 440 F.3d 850 (6th Cir.2006), the court quoted the following passage from Judge Lundin's chapter 13 treatise with approval:

> "Lien retention in § 1325(a)(5)(B)(i) has been interpreted to require that payments through the plan must at least equal depreciation in the value of collateral during the repayment period. Not to be confused with adequate protection before confirmation or with the payment of present value (interest) after confirmation, lien retention avoids constitutional problems only if periodic payments under the plan equal or exceed the value lost through depreciation and use of collateral by the debtor after confirmation. Put another way, even if the plan recites that secured claim holders retain liens, if the payments pro-

posed by the plan are insufficient to stay ahead of depreciation, the retained liens will erode faster than the allowed secured claim is paid, contrary to the intent of § 1325(a)(5)(B)(i).

. . .

> The power to modify a secured claim is limited to the extent that the debtor must propose payments that equal or exceed the depreciation in value of the collateral that secures the claim. Otherwise, the delay in payments through the plan would take value from the lien without compensating the creditors for its loss. [L]ien retention is implicated when the order of payments to creditors under the plan delays or interrupts the payment of a secured claim such that the value of the collateral falls more quickly than the lienholder receives payments."

*Id.* at 853–54 (quoting K. LUNDIN, CHAPTER 13 BANKRUPTCY 104–4 to 104–5 (3rd ed.2000) (emphasis added)).

Other courts have also recognized that adequate protection of the value of a creditor's lien is an essential component of lien retention. In the case of *In re Hanna,* 912 F.2d 945 (8th Cir.1990), the Eighth Circuit addressed the meaning of lien retention on a herd of livestock in a chapter 12 case. At the time treatment of secured creditors under chapter 13 was substantially identical to such treatment under chapter 12. In that case, the court said:

---

**3.** It is generally recognized that unfortunate consequences may follow when a creditor sits idly by during a bankruptcy case and fails to protect its rights. *See, e.g., In re Andersen,* 179 F.3d 1253, 1257–58 (10th Cir.1999) *overruled on other grounds by In re Mersmann,* 505 F.3d 1033 (10th Cir.2007) ("[W]e ... recognize that the affirmative obligation to object to the [debtor's] plan rested with [the creditor]...."); *Matter of Pence,* 905 F.2d

1107, 1109 (7th Cir.1990) ("[The creditor] was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings."); *In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 1267 (10th Cir.1988) ("We agree with the District Court's finding that creditors are obligated to take an active role in protecting their claims.").

The lien on the herd will not suffice to meet Chapter 12's lien retention requirement if it fails to adequately protect the creditor's secured claim over the course of the plan repayment period. Accordingly, the plan must provide that the value of the herd will be maintained at a level sufficient to ensure that the creditor will recover the balance remaining on its claim in the event the debtor defaults on plan payments.

*Id.* at 951 (citations omitted). Also, in this jurisdiction, it was recognized early on that plan provisions must not only pay the secured creditor the value of its secured claim, but must protect the creditor from loss due to depreciation:

> 'If a Chapter 13 plan fails to adequately protect a secured creditor from diminutions in collateral value by granting him additional security or payments, the plan no longer shields the debtor but arms him with a sword with which the debtor may rehabilitate his financial condition at the secured creditor's expense.'

*In re Johnson,* 63 B.R. 550, 554 (Bankr. D.Colo.1986) (quoting *Bowman and Thompson, Secured Claims Under Section 1325(a)(5)(B): Collateral Valuation, Present Value, and Adequate Protection,* 15 Ind.L.Rev. 569, 586–88 (1982)).

The policy argument advanced by the *Nolan* court is, therefore, difficult to harmonize with the common understanding of § 1325(a)(5) as providing a secured creditor the right to receive payment of the amount of its secured claim with interest, as well as compensation for the decline in the value of its collateral through depreciation. The premise of the *Nolan* court's policy argument was that the creditor would inevitably suffer an uncompensated decline in the value of its collateral if a debtor were permitted to surrender the collateral post-confirmation. But that premise fails in light of the fact that lien retention under § 1325(a)(5) requires the value of the creditor's lien interest to be protected.

### 2) An Allowed Secured Claim May be Recharacterized Post Confirmation in a Modified Plan

■ Having examined both the textual statutory grounds for the *Nolan* and *Adkins* decisions and the Sixth Circuit's policy argument, this Court finds that it must part company with *Nolan* and *Adkins* as well as those courts which follow them. The Court does not do so lightly. Any opinion coming from a circuit court of appeals must be given the highest degree of respect. Nonetheless, this Court must exercise its independent judgment to interpret the law in accordance with those precedents that are binding upon it as well as non-binding persuasive authority and its own experience. On balance, the Court finds the better reasoned view recognizes the interplay of §§ 502(j) and 1329(a) to allow for recharacterization of a secured claim following foreclosure or surrender of collateral and treatment of the resulting deficiency claim in a modified plan.

In so holding, the Court does not minimize the possibility that a debtor may damage or abuse a creditor's collateral in a manner that accelerates the decline in the collateral's value beyond the protection built in to plan confirmation under § 1325(a)(5). But Congress explicitly provided the bankruptcy courts with the tools to deal with those exceptional cases. Where a court reconsiders a claim under § 502(j), that section commands the court to allow or disallow the claim "according to the equities of the case." Under the Bankruptcy Code, therefore, the courts have a focused rule, explicitly expressed in the statutory language, that allows them the latitude to account for a debtor's ineq-

uitable conduct at the time it reconsiders a secured claim under § 502(j).

Moreover, as a practical matter, if the Court were to hold that § 1329 does not allow a debtor to modify a plan to take into account the post-confirmation foreclosure or surrender of collateral, it is difficult to conceive of a rational debtor continuing the chapter 13 case. It must be remembered the rule suggested by the *Nolan* and *Adkins* cases, that this type of post-confirmation modification is impermissible *per se*, is not based on any finding that a debtor has committed any form of abuse or acted in bad faith. Under *Nolan's* rationale, a debtor would be required to continue paying for a surrendered or foreclosed home or car as if he still owned it while likely trying to pay for alternative housing or transportation. The odds that any debtor would have the wherewithal to continue the chapter 13 reorganization under such circumstances would be remote even for the most highly motivated debtor.

■ In or out of bankruptcy, the position of a second or third mortgage holder is risky business. In any case where a creditor secures an obligation with a junior lien, there is always the risk that the debtor may default on the first mortgage and that the senior creditor may decide to foreclose. In those circumstances, the junior lien holder's options are generally unattractive. Whether it does so pre-foreclosure, at the foreclosure sale, or by exercise of redemption rights, the junior lien holder must ultimately satisfy the senior lien in order to exercise its own rights in the collateral. Where the junior lien holder either lacks the ability to satisfy the

senior lien or where the value of the collateral is too low or uncertain to justify making payment to the senior lien holder, the junior lien is simply lost in the foreclosure process. That is a function of state law, not of the bankruptcy process, and it is a risk that exists any time a creditor secures an obligation with a junior lien.

That is the unfortunate situation that Fields finds herself in. Whether through exercise of her business judgment or simple lack of financial ability, Fields did not satisfy the senior lien on the property and her lien has been extinguished. Outside of bankruptcy court, her position is that of an unsecured creditor. Thus, the circumstances that existed at the time Fields filed her proof of claim have been substantially altered. Under the facts of this case, the Court finds that cause exists to reconsider its allowance of Fields' claim whether or not she files an amended claim.

■ The Fields claim has been split into two separate claims, which total the $183,335.00 original amount of her secured claim. The proof of claim now on file for Kimberly Doss, f/k/a Kimberly Fields, reflects a debt in the amount of $165,001.50 secured by a lien on Debtor's residence. The proof of claim filed by Henry Doss reflects a debt in the amount of $18,333.50 secured by Debtor's residence. The foreclosure of the first mortgage and extinguishment of the Fields lien does not affect the amount of the debt owed by the Debtor, but it does convert her position from secured to unsecured.[4] Therefore, the Court hereby reconsiders the Fields claim under § 502(j); finds that cause ex-

---

4. In reality, it is likely the Fields Claim was only partially secured prior to the filing of this bankruptcy case. It was only secured to the extent that the value of her collateral was great enough to fully cover all prior liens with value remaining to cover some or all of her lien. From the Debtor's first proposed plan, he has taken the position that the Fields lien had no value. However, the Debtor neither objected to the Fields Claim nor moved for avoidance of the lien under § 506(d). Consequently, the Court never had occasion to examine the value of the real estate or any lien priority issues.

ists for such reconsideration; finds that claim number 13–2, filed by Kimberly Doss, f/k/a Kimberly Fields, is hereby allowed as an unsecured claim in the amount of $165,001.50; and finds that claim number 14, filed by Henry Doss, is hereby allowed as an unsecured claim in the amount of $18,333.50.

■ The Court further finds that the Debtor's proposed modification of the treatment of Fields claim under his plan is permissible under §§ 1329(a)(1) & (2). At first reading, it appears that §§ 1329(a)(1) & (2) are inapplicable to an individual secured claim like the Fields claim because the modification provisions in those subsections apply only to classes of claims.

That impression is reinforced by the structure of our district's model chapter 13 plan upon which the Debtor's plan is based. For example, that model plan lumps all obligations where the debtor plans to cure a default under "Class Two." But Class Two contains subclasses to address the cure of defaults: 1) with respect to the debtor's principal residence; 2) with respect to other long-term secured debt; and 3) executory contracts. "Class Three" in the model plan contains subclasses for secured claims subject to § 506 and another for those not subject to § 506.

The use of that "class" terminology in the model plan is unfortunate. Each "class" contains claims that are subject to disparate treatment and even contain subclasses within which different claims may be treated differently. But § 1322 of the Code provides that "if the plan classifies claims, [it shall] provide the same treatment for each claim within a particular class." 11 U.S.C. § 1322(a)(3). Referring to the categorization of claims that appears in the model plan as "classes" is plainly contrary to the requirement of § 1322(a)(3) that each claim in a class must be treated identically. The model plan's structure is a matter of convenience, but does not change the substance that, with rare exception, each secured claim occupies its own class.

The reference in §§ 1329(a)(1) & (2) to classes of claims is not as restrictive as it may appear. First of all, unlike a debtor in chapter 11, a chapter 13 debtor is not required to designate classes of claims. In chapter 11, § 1122 requires claims to be categorized by class; and claim classification is significant in the voting and confirmation process. By contrast, § 1322(a)(3) clearly makes such claim classification optional. Also, the chapter 11 requirement for classification under § 1122 is that claims in the same class must be "substantially similar" to other claims and interests in the same class. Section 1322(a)(3), however, requires much more than substantial similarity of claims, it requires that, if the debtor chooses to classify claims, each claim in a given class must be treated the same. In most chapter 13 cases, it is convenient to refer to a class of unsecured creditors and most unsecured creditors will be treated alike. Other than that, classification of claims in a chapter 13 context has little utility.

The Debtor's plan in this case serves to illustrate the point. The Corrected Amended Plan contains the following secured claims

1. The first mortgage on his home where he proposes to cure a $10,-000.00+ arrearage and otherwise maintain payments without modification outside the plan;

2. A motorcycle loan on which he proposes to cure an arrearage and bifurcate the claim under § 506(a);

3. The second and third liens of Fields and Electrical Federal Credit Union, which the Debtor characterized as wholly unsecured;

4. An automobile loan where the collateral was to be surrendered; and

5. A loan on a 5th wheel trailer to be paid outside of the plan without modification.

Except for the declaration that the second and third liens on his residence are unsecured (without seeking a judicial determination of those facts) there is no uniformity of treatment of the secured claims as would be necessary to place them in classes under § 1322(a)(3). For all intents and purposes, each secured claim is a separate class except for the Fields and Electrical Federal claims which do receive identical treatment. The Debtor's proposed modification does apply equally to both creditors.

■ The above situation is fairly typical in the Court's experience. It is to be expected there would be little uniformity of treatment for secured claims because the Code itself dictates unique treatment for mortgages on a debtor's residence and vehicles purchased within 910 days of the petition date. Thus, the Court agrees with those courts and commentators that have observed that each secured creditor in a chapter 13 case represents a separate class of creditor. 8 COLLIER ON BANKRUPTCY ¶ 1329.04[1] (rev. 15th ed.2007); *Bank One, NA v. Leuellen*, 322 B.R. 648, 657 (S.D.Ind.2005); *In re Knappen*, 281 B.R. 714, 717 (Bankr.D.N.M.2002); *In re Jock*, 95 B.R. 75, 76–77 (Bankr.M.D.Tenn.1989), *overruled by In re Nolan*, 232 F.3d 528 (6th Cir.2000).

That said, it follows that §§ 1329(a)(1) & (a)(2) permit modifications that increase or decrease payments to a particular class or to extend or reduce the time for such payments. Referring to "claims of a particular class" in those subsections allows for adjustments to the unsecured class or the other, less common, instances where two or more claims do receive identical

treatment. But, more importantly, it also permits adjustment to an individual claim whose treatment cannot be grouped together with other claims.

■ When read in context with claim reconsideration under § 502(j), it is apparent that § 1329(a) permits modifications to be made to a plan that reflect the reality of changed circumstances. *See, e.g., In re Murphy*, 474 F.3d 143 (4th Cir.2007) (After debtor sold his Condominium, trustee's motion to modify was granted to apply increased equity in the property to the payment of creditors.); *In re Nichols*, 440 F.3d 850 (6th Cir.2006) (modification to allow cure of post-confirmation default due to debtor's job loss); *In re Arnold*, 869 F.2d 240 (4th Cir.1989) (Trustee's motion to modify granted to increase plan payments due to debtor's income increase); *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir.1987) (Commenting that if the debtor's income increased in the future, the creditor could request a modification under § 1329(a)); *Bank One, NA v. Leuellen*, 322 B.R. 648 (S.D.Ind.2005) (modification allowed after the surrender and liquidation of collateral). Instead of artificially maintaining Fields' claim as a secured claim for the purposes of the Debtor's bankruptcy case, reclassifying the claim as unsecured puts Fields in the same position she would occupy under state law outside of bankruptcy court.

■ Procedurally, this case is not a pretty picture. No doubt the parties, just as much as the Court, would prefer to see this case postured more cleanly without the prior notice issue and the consequent finding with respect to the binding effect of the plan. Nonetheless, as untidy as this case is procedurally, the result the Court reaches today does not offend Fields' due process rights or prejudice her in any substantive manner.

She has had a full hearing in this Court on her allegations of fraud and bad faith on the Debtor's part and this Court has made a finding that the Debtor is not guilty of fraud or bad faith with respect to his chapter 13 plan. In Fields' presence at the August, 13, 2007, hearing, the Court discussed at length its desire to have a plan in place that does deal with the Fields claim and reflects the Debtor's changed circumstances. At that time, the Court set a deadline and directed the Debtor to file a modified plan. Fields received notice of the Modified Plan; filed her objections; and had a full and fair opportunity for a hearing on those objections.

If the Court would have followed Fields' theory of the case, it would have ruled either that no modification proposed by the Debtor could include her claim or that it must be treated as a secured claim just as if her lien interest still existed—totally contrary to the facts. In one case, the Debtor would be faced with a total inability to discharge any portion of the Fields claim in the current case; in the other, he would have been forced to treat a creditor with no lien interest as a secured creditor under his plan.

In either event, a likely alternative course of action for the Debtor would be to dismiss and refile a new chapter 13 bankruptcy without the procedural disabilities of this current case. Such a filing would, no doubt entail yet more litigation and expense for the parties, possibly with new allegations of bad faith. · But to abandon a case made untenable only because of procedural difficulties and not because of the Debtor's fraudulent or inequitable conduct is less suggestive of bad faith than of a desire to place the case in a posture where all of the Debtor's obligations may be dealt with as prescribed by the Code. The most probable end result would be for the parties to wind up exactly where they are as a result of this Order, but a good deal poorer for the additional legal expense. *See Bank One v. Leuellen*, 322 B.R. 648, 653–54 (S.D.Ind.2005); *In re Frost*, 123 B.R. 254, 259 (S.D.Ohio 1990).

In accordance with the above discussion, it is hereby

**ORDERED** that Debtor's *Motion to Reclassify Proofs of Claim # 3 (Filed by Bank of New York as Trustee for the Certificateholders CWABS 2005–9), # 6 (Filed by Electrical Credit Union), # 13 (Filed by Kimberly Doss) and # 14 (Filed by Henry Doss) Pursuant to 11 U.S.C. § 502(j) and Fed.R.Bankr.P. 3008* (docket # 134) is GRANTED pursuant to 11 U.S.C. § 502(j):

a. Claim # 3, filed by Bank of New York as Trustee for the Certificateholders CWABS 2005–9, is hereby APPROVED as an UNSECURED claim in the amount of $625,994.67;

b. Claim # 6, filed by Electrical Credit Union, is hereby APPROVED as an UNSECURED claim in the amount of $50,504.70;

c. Claim # 13, filed by Kimberly Doss, is hereby APPROVED as an UNSECURED claim in the amount of $165,001.50; and

d. Claim # 14, filed by Henry Doss, is hereby APPROVED as an UNSECURED claim in the amount of $18,333.50.

**ORDERED** that *Debtor's Motion for Post–Confirmation Modification of Confirmed Chapter 13 Plan Pursuant to 11 U.S.C. § 1329* (docket # 110) is GRANTED; it is further

**ORDERED** that Debtor's *Second Amended Chapter 13 Plan Including Valuation of Collateral and Classification of*

*Claims, August 24, 2007* (docket # 114) is hereby CONFIRMED.